# Exhibit A

ISSUES PRESENTED FOR REVIEW / REQUEST APPOINTMENT FOR COUNSEL

## I. STATEMENT OF INTRODUCTION:

Including the Fourth Amendment and its analogs, along with statues, and rules, condemn certain seizures and therefore forfeitures, as unreasonable. We now consider the various material issues of fact surrounding Bennett's "unaware of forfeiture" to be resolved and that is entitled to judgement as a matter of law before the government obtains illegally Bennett's innocent property. Now for the traced history of the violations that occured against Bennett that turned this "unaware of forfeiture" into an unreasonable act by the U.S. government.

Bennett's pre-trial incarceration began October, 2017, 7 years ago. Her trial was in October, 2018, six years ago. Bennett's sentencing was July, 2019, 5 years ago.

Bennett was never notified of this government forfeiture action until last week on 7-21-24, 6 years after trial and 5 years after sentencing, when Bennett received, by certified mail at FPC Danbury: "Motion For First Final Order Of Forfeiture." Before this notice, neither Bennett's former criminal trial lawyer Dennis Boyle or the government gave notice to Bennett while she was incarcerated these last 7 years.

Lastly, Bennett and the court would benefit from an appointed counsel's expertise regarding forfeitures including reviewing the record, conducting a preliminary factual investigation, and ensuring that all possible claims for relief have been discovered and evaluated. Bennett is desperately seeking relief from this unreasonable forfeiture on her innocent property because it will cause injury that will affect Bennett in a deeply personal and individual way.

## II. ISSUES PRESENTED FOR REVIEW:

1. <u>Whether</u> the government's order for criminal forfeiture is plainly erroneous as the 7-21-24 "Motion For First Order Of Forfeiture" involves controlling questions of law, circumstances, and facts on which there is substantial ground for difference of opinion.

2. <u>Whether</u> the government understands that Bennett's restitution is made up of 100% Bennett's company notes only and that at this stage it's an improper argument that Bennett owes any more restitution when on August 29, 2021 (Case No.: 8:17cr000472 PX), a notice of settlement was filed: "Reduction of Restitution Amounts Owing," (SEE EXHIBIT B) proving that over half of Bennett's company noteholders who pursued FINRA arbitrations received settlement payments in exchange for full releases, covering Bennett. As well as the remaining noteholders value of $7,227,056.00, whom refused the settlement and decided as experienced investors for over 25 years, and instead chose to be

Page 1 of 6

renumerated thru the IRS allowable method of using tax loss amounts against capital gains amounts, in order to off-set dollar for dollar, taxes due as an acceptable and legally allowed IRS deduction. These respective capital gains were filed with the IRS "pre-trial" and/or "pre-sentencing." Therefore, to date, the restitution total amount of $14,306,842.00 should be a zero balance. Equally as important to note, both of these forms of reimbursement of restitution is the reason/proof as to why there were zero third parties' claims filed with the government with respect to the subject property. The deadline to notify the government for third parties' claims expired on December 23, 2019, 5 years ago. 21 U.S.C. § 853(n)(2). Proving Bennett should not be responsible for redundant payments of ordered restitution. Nevertheless, to date, the government has not yet reduced the restitution order of $14,306,842.00 to a zero balance.

3. <u>Whether</u> the government acknowledges there are zero third parties' claims against Bennett's innocent property due to the fact the noteholders amounts due to them, which constitutes 100% of the make-up of the restitution $14,306,842.00 were paid back pretrial, October 2018 and pre-sentencing, July 2019 by Western Securities and the IRS dollar for dollar remuneration method United States v. Bane, 948 F 3d, 1290, 1294 (11th Cir. 2020)

4. <u>Whether</u> one of several notable themes in this forfeiture is the continual case in point of interference with Bennett's client-attorney relationship by FBI Agent Custer. This issue is the original cause of the "unaware" of forfeiture in the first place. FBI Agent Custer engaged in a premeditated game plan to agitate Bennett's lawyer Dennis Boyle, Esquire to quit Bennett's case. Custer's goal was to handicap Bennett in terms of her sentencing and Boyle's contractual responsibility to move Bennett's household items and personal effects to storage. Custer's inherently dishonest game plan succeeded. Boyle quit Bennett's case. Thus, Custer violated Rule 3-310(F) which turned out to be an unpalatable injustice when Boyle resigned as Bennett's counsel; wherefore, the government was compelled to move and store Bennett's personal items and then begin the government's protocol of officially itemizing Bennett's innocent property because it was now their warehouse and responsibility. This establish probable cause to believe that the government never seized Bennett's innocent property under a seize order. This is the probable reason Bennett never had dominion over the claim nor did she receive the right to exclude the government from this property because it was never a seized forfeiture. FBI Agent Custer's deceitful act caused an irretrievable breakdown of Bennett's client-attorney relationship. Custer's actions, post-

Bennett's criminal trial, was intended was intended merely to harass or injure Bennett or work oppression or wrong doing. Disseminating [sic] false and defamatory information about Bennett, post criminal trial to Bennett's lawyer, the obsessed Custer wanted to cause more difficulty towards Bennett by eluding falsehoods and defamatory information about Bennett. Bennett did nothing to warrant FBI interference while in post-trial incarceration. Because FBI Agent Custer engaged, post trial, in an act of meddling in Bennett's client-attorney relationship, Custer became an obstruction to Boyle moving Bennett's innocent property as per Boyle's contract with Bennett which was authored by Dickenson & Wright law firm. Hence in this case there can be no question, a reasonable prudent man in this circumstances can understand, the government was simply compelled to move Bennett's innocent property to storage until Bennett is released from prison.

5. <u>Whether</u> Bennett's trial counsel, Dennis Boyle's ineffective assistance under Strickland v. Washington, 466 U.S. 668 (1984) with respect to the restitution and this AR forfeiture, is The reason Bennett filed for a timely notice in order to request an extension with the federal court one year statue of limitations of Bennett's 2255 right of appeal. This will allow Bennett to challenge the restitution having been reduced to a zero balance pre-trial and or pre-sentencing, yet, it was never reported to the court. In the end, Boyle's representation fell below an objective standard of reasonableness which caused Bennett to be forced with this misunderstanding of why the government were compelled to store her belongings. Likewise, "if" the government had submitted the forfeiture instruction to the court, Dennis Boyle failed to oppose it making Bennett "unaware" and not able to remedy the wrongful situation 5 years ago.

6. <u>Whether</u> the government acknowledges there is a gap in coverage, as the statute compels: 18 U.S.C §§ 1956-57, Section 984: "no Rules of Forfeiture brought by the government state: "no action is allowed to forfeit property not traceable directly to the offense that is the basis for the forfeiture commenced more than 1 year from the date of the offense. SEE Stefan D Cassella. The Civil Asset Forfeiture Reform Act of 2000: Government Forfeiture Authority and Strict Deadlines Imposed on All Parties, 27. J. Legis, 97, 101 (2001). Hitherto, the government's clock on Bennett's forfeiture order lapsed, by setting aside Bennett's innocent property, as it should have, because it was never a forfeiture in the first place... 6 years after trial and 5 years after sentencing.

7. <u>Whether</u> the government demonstrates beneath the more fulsome summary of Bennett's trial transcript evidence proves Bennett was never provided a "traceable report" from the government because there were zero "tainted assets" involved in Bennett's case as plainly stated in the trial transcripts by AUSA Thomas Windom. Further, the sole purpose served by 502(z)(1)(B) is to preclude redundant recoveries on identical claims against, in this case, innocent property holdings that do not have tainted criminal assets traced to it in violation of the fundamental Code policy fostering equitable distribution among all creditors of the same class. Ergo, the "double-dipping" and "double-recovery" threat in the Bennett forfeiture that would result from the "redundant payments" the government would receive in forfeiting Bennett's untainted holdings.

## III. OTHER PERTINENT TRUTHFUL FACTS:

1. During 2017, 2018, and 2019 Bennett was incarcerated pre-trial @ DC correctional facility, Maryland state facility, and the federal Maximum security Chesapeake in Baltimore, Maryland.

2. Bennett never received a Preliminary Forfeiture order or an Administrative forfeiture order from her lawyer Dennis Boyle or the U.S. government.

3. During Voir dire (to speak the truth...) AUSA Thomas Windom "cleared" Bennett and her company, DJBennett.com, of a ponzi scheme status.

4. As stated in 7.31.19 Sentencing Judgement, it showed zero actual losses associated with Bennett's criminal case, as well as, zero pecuniary losses, zero financial penalties, zero fines, and zero personal gain.

5. There were zero third parties debt or claims against Bennett's innocent property because, as it turns out, the restitution was paid in full pre-trial and pre-sentencing. The third parties notices expired on December 23, 2019.

6. There were zero claims from financial institutions

7. The forfeiture list from the government filing on 7.11.24 is the majority personal shoes, furniture, books, and cooking ware plus, family mementos.

8. There were zero general creditors.

9. There were zero judgement creditors.

10. There were zero lienholder creditors.

1. According to FPC Danbury Case Manager J. Ramos, for the past 7 years, while Bennett has been in BOP custody, Bennett's BOP masterfile has "zero" record of any forfeiture notices.

2. According to FPC Danbury Case Manager J. Ramos, for the past 7 years, while Bennett has been in BOP custody, Bennett's 7.31.19 Sentencing Judgement does "not" nor did it ever have a forfeiture notice attached.

3. During the 2018 criminal trial, the DOJ offered zero/no specific and reliable evidence that established losses of Bennett's private company or for that matter, any financial gain by Bennett.

4. None/zero of Bennett's relatives, friends or business associates informed Bennett in 2019 that they were notified as a third parties' debtor due to the fact they were already paid in full pre-trial (2018) and or pre-sentencing (2019). At the time of the notification the restitution balance is zero.

15. Bennett never attended a pre-conviction and or a pre-evidentiary hearing for forfeiture ... that she recalls, consequently, if these meetings occurred, Bennett was unable to file a notice of Appeal.

16. Bennett never attended a post-conviction or post-evidentiary or post-sentencing forfeiture meeting.

17. According to the 7.31.19 Sentencing Judgement, Bennett was "never" ordered to pay a monthly or quarterly FRP (Financial Restitution Payment.)

## IV CONCLUSION:

If the government is allowed the forfeiture judgement against Bennett and the restitution order declared non-dischargeable, not only will Bennett have to pay the restitution amount, twice, but also the required administrative fee and the interest on the judgement amount declared non-dischargeable. Bennett argues that this amounts to "double-dipping" and is patently unfair. The U.S. government must acknowledge of the original restitution amount of $14,306,842.00 was cut in half by the $7,079,786 pretrial reduction of restitution amounts owing, where the government was notified in a motion filed on 8.29.21, and the remaining $7,227,056.00 were noteholders, who were experienced investors when they declined the settlement and instead chose to be remunerated by the Internal Revenue Service (IRS) allowable method of dollar for dollar recuperation

Page 5 of 6

of capital losses together with anticipated future Taxes. Hypothetically reducing The original restitution balance to zero or a miniscule amount remaining <u>Bennett's restitution is paid in full.</u> In re Hemingway, 993 F 2d at 253, 16 see also Aetna, 1995 U.S. Dist Lexis 10120, 1995 WL 429018, at *3, In re Lyondell, 442 B.R. at 253 supports that the 7.11.24 forfeiture judgement would be setting up precisely the redundant recoveries section 502(e)(1)(B) was created to prevent. So, this order of forfeiture appears plainly as a penalty. My hope and prayer is that the U.S government should worship truth and fact concerning this erroneous and unreasonable forfeiture and <u>dismiss</u> the 7.11.24 "Motion For First Final Order of Forfeiture."

## V. REQUEST APPOINTMENT FOR COUNSEL:

I spoke with 3 lawyers and was declined pro-bono representations:

1st   David B. Smith, Esquire
      David B. Smith, PLLC
      108 North Alfred St. 1st Floor
      Alexandria, Virginia 22314
      703.548.8911
      dbs@davidsmithpllc.com

2nd   William Zapf, Esquire
      Kaiser Dillon Law

      Washington, D.C.
      202.869-1300
      wzapf@kaiserdillon.com

3rd   Scott Drucker, Esquire.
      1325 Franklin Avenue Suite 225
      Garden City, N.Y 11530
      516.874.3485
      Scott@kaseandbrukerlaw.com